IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RANDY WILLIAM SHARP, #06706 | § | |
| VS. | § | CIVIL ACTION NO. 2:23cv121-JRG-RSP |
| UPSHUR COUNTY MEDICAL, ET AL. | § | |

<u>REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Randy William Sharp, a prisoner now confined within the Texas Department of Criminal Justice (TDCJ), filed this civil rights lawsuit complaining of alleged violations of his constitutional rights while incarcerated at the Upshur County Jail. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Sharp sues Defendants Upshur County Jail Medical Department, Rebecca Jones, and David Buller. The present Report concerns Defendants' motion for summary judgment, (Dkt. #31). For reasons explained below, the Court recommends that the motion be granted and that Plaintiff's claims be dismissed with prejudice.

**I. Sharp's Claims**

Sharp maintains that he was an inmate at the Upshur County Jail and a victim of a major eye injury, (Dkt. #1, pg. 5). He claims that he was scheduled for an appointment at the DeHaven Eye Clinic in Tyler, Texas—and that he has "paid the DeHaven Eye Clinic over $56,000.00," but that the jail agreed to pay for it. He claims that he was then discharged as a patient and "lost" his transplant.

He also claims that while in jail he was given an appointment to the Gilmer Eye Clinic for either February 2 or 3, 2023, and Lieutenant Ferguson cancelled the appointment "for no reason," which is causing him to go blind. *Id*. at pg. 5.

Subsequently on February 3, 2023, he was "carried to the hospital" to remove a hernia and to have another fixed. *Id*. The doctor called Defendant Jones, the nurse at the Jail, before surgery and said that he "will not do this surgery if the jail does not agree to give Mr. Sharp the narcotic pain meds I prescribe him for post[-]surgery," to which Defendant Jones agreed. Sharp asserts, however, that once he arrived back at the jail, he was not given the pain medication ordered by the surgeon. He insists that he remains in "an above tolerable level of pain" as a result of Defendant Jones ignoring his request, which constitutes cruel and unusual punishment as well as torture and neglect. Sharp seeks $2 million "for purposely costing" his vision and for torture because he had no medications.

**II. Defendants' Motion for Summary Judgment**

After an Order to do so, Defendants filed an answer and the present motion for summary judgment, (Dkt. #31), addressing Sharp's allegations. Defendants Jones and Buller argue that they are entitled to qualified immunity because Sharp failed to demonstrate a constitutional violation. Defendants attached several exhibits to the motion:

Exhibit A:      Affidavit of Vanessa Ferguson

Exhibit B:      Affidavit of David Buller

Exhibit C:      Affidavit of Rebecca Jones

Exhibit D:      Plaintiff's Sharp's Bond and Release Documents

Exhibit E:      Sharp's Relevant Medical Documents

Exhibit F:      Sharp's Relevant Jail and Arrest Documents

       Exhibit G:      Sharp's Relevant Grievances

       Exhibit H:      Business Records Affidavits for Exhibits D-F

Defendants also filed a Notice, (Dkt. #33), highlighting that Sharp never filed a response to Defendants' motion for summary judgment.

**III. Legal Standards**

A court shall grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. In determining whether there is a genuine dispute of a material fact, the court must examine the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *See S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994). Summary judgment is appropriate "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). "Material facts are those that might affect the outcome of the suit under the governing law." *Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 422 (5th Cir. 2019) (internal citation and quotations omitted).

The Fifth Circuit has held that summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *See Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). It is not the function of the trial judge—in ruling on a motion for summary judgment—to weigh the evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence. *Id*. at 567 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record

demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Util., Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988).

To carry this burden, the non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). All reasonable inferences are drawn in favor of the non-moving party, but the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only "a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011); *Chacon v. York*, 434 F. App'x 330, 332 (5th Cir. 2011). "Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation" will not survive summary judgment. *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016). Rather, the non-movant "must point to specific evidence in the record demonstrating a material fact issue" at the summary judgment stage. *See Mitchell v. Mills*, 895 F.3d 365, 270 (5th Cir. 2018). The non-movant cannot rest upon mere allegations or "denials of the adverse party's pleading." *See U.S. v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001).

When qualified immunity is invoked, as is here, "only evidence—not argument, not facts in the complaint—will satisfy" the burden of proof necessary to defeat summary judgment. *See Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) (internal citation omitted). Once the movant asserts immunity, the burden then shifts to the plaintiff to rebut it with more than

4

conclusory allegations, unsubstantiated assertions, or speculation. *See Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003); *see also Miller v. Graham*,447 F. App'x 549, 551 (5th Cir. 2011) ("Miller has not overcome Graham's assertion of qualified immunity because he presented nothing but conclusory allegations and unsubstantiated assertions to assert his claim").

**IV. Discussion and Analysis**

Sharp is proceeding *pro se* and is therefore entitled to liberal construction of his claims. *See Haines v. Kerner*, 404 U.S. 519 (1972). The Court understands, then, that Sharp maintains that Defendants Jones and Buller acted with deliberate indifference to his serious medical needs while incarcerated, and that all Defendants refused to cover his medical costs incurred while at the Upshur County Jail.

However, Sharp did not file a response to Defendants' motion for summary judgment. As a result, the facts the facts outlined in Defendants' motion are uncontested. A review of the summary judgment evidence, viewed in the light most favorable to Sharp, demonstrates that the evidence before the Court could not lead to different factual findings and conclusions. Summary judgment in favor of Defendants is warranted.

<u>1. Deliberate Indifference to a Serious Medical Need</u>

The Court understands that Sharp maintains that Defendants acted with deliberate indifference to his serious medical needs concerning his eye and lack of narcotics. Specifically, he maintains that the Defendants "cost [him] his eye transplant," refused to provide him medication that was prescribed for his surgery, and refused to pay for his medical costs.

But the uncontested summary judgment evidence reveals that there is no issue of material fact regarding whether Defendants Jones, Buller, and the Upshur County Jail acted with deliberate indifference. The record demonstrates that Sharp (1) was released from Jail in order to see an eye

5

specialist, but did not do so; (2) was rearrested and treated for his eye complaints inside the Jail, including visiting a specialty eye clinic; (3) received a successful hernia surgery, and (4) was prescribed pain medication inside the jail. None of these uncontested facts illustrate deliberate indifference to a serious medical need.

As an initial matter, under the Federal Rules of Civil Procedure, a party to a lawsuit must have the capacity to be sued. Fed. R. Civ. P. 17(b). A department of a local government entity must "enjoy a separate legal existence" to be subject to a lawsuit. *See Darby v. Pasadena Police Department*, 939 F.2d 311, 313 (5th Cir. 1991). The Fifth Circuit, for example, has held that Texas law does not allow county or municipal police departments to be sued directly. *Id*. at 313-14; *see also Crull v. City of New Braunfels, Texas*, 267 F. App'x 338, 341-42 (5th Cir. 2008) (unpublished) ("Therefore, the Police Department is not a separate legal entity apart from the City and the district court did not err in dismissing the claims against the Police Department.").

Here, the Upshur County Medical Department is a sub-unit of Upshur County Jail has no separate legal existence apart from the county. The department cannot be sued in its own name. *See Darby*, 939 F.2d at 313; *see also Lane v. Athens Police Dep't*, No. 6:05-cv-498, 2006 WL 1049966 at *3 (E.D. Tex. Mar. 24, 2006 ("While he does sue the Henderson County Jail, the jail is not a separate legal entity and cannot be sued in its own name."). Sharp's complaint against the Department should be dismissed.

Turning to the merits of Sharp's claims, the Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)). To succeed, Sharp must demonstrate that (1) the official was "aware of facts from which the inference could be drawn that

a substantial risk of serious harm exists," and (2) the official actually drew that inference. *See Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

It is well-settled that mere disagreement with medical treatment provided is insufficient to show deliberate indifference. *See Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018); *Stewart v. Murphy*, 174 F.3d 530, 533-34 (5th Cir. 1999). The decision whether to provide additional treatment is a classic example of medical judgment, which likewise does not give rise to deliberate indifference. *Dyer*, 964 F.3d at 381; *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Similarly, mere negligence—or even gross negligence—does not constitute deliberate indifference. *Thompson*, 245 F.3d at 458-59.

### a. Sharp's Arrival at the Upshur County Jail and Release to see an Eye Doctor

Sharp was booked at the Upshur County Jail on August 18, 2022, (Dkt. 31-1, Exhibit A). While booked in the jail, he "began to complain to jail staff about irritation to his left eye related to an alleged chronic condition." He was given eyeglasses and an eye patch, (Dkt. 32-1 at pg. 15, Exhibit E). Moreover, Lieutenant Ferguson, a nonparty, testifies that during his first incarceration at the Jail, Sharp was also provided pain medication, Tylenol/Ibuprofen for his eye complaints, (Dkt. #31-1, pg. 2). He was released on his own personal recognizance bond on October 13, 2022—and instructed to see an eye specialist to receive treatment for his chronic condition and to follow up on his planned cornea transplant, (Dkt. #31-1 at pg. 2). Lieutenant Ferguson specifically explains that "[i]t was decided that releasing Mr. Sharp from the jail's custody so that he could go see his own eye specialist put him in the best position to obtain the specialty medical care he sought for his alleged chronic eye conditions, and as quickly as possible. *Id*.

The uncontested record reflects that when Sharp arrived at the Jail in August 2022, he was given eyeglasses, an eye patch, and pain medication for his eye complaints. He was even released on his own personal recognizance bond so that he could receive the medical treatment for his eye that he needed. Accordingly, the evidence does not reveal that jail officials refused to treat him, ignored his complaints, intentionally treated him unsuccessfully, or any other wanton action that would evince deliberate indifference to his serious eye needs. *See Farmer*, 511 U.S. at 837; *see also Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

### b. Sharp's Rearrest and Continued Complaints

The uncontested summary judgment evidence further reveals that Sharp was rearrested and rebooked into the Upshur County Jail on January 7, 2023, (Dkt. #31-6, pg. 6, Exhibit F). According to Ferguson, upon his rebooking, Sharp failed to denote any eye impairment or issue on his standard intake forms—but did mention a hernia, (Dkt. #32-1, pg. 4).

During this second stint at the Jail, Sharp began writing jail grievances complaining about "migraines because of [his] eyes," and specifically requested a second opinion regarding his hernia, (Dkt. #31-7, pg. 3, Exhibit G). In the response to his first grievance, a jail officer explained that he added ibuprofen 600 MG twice per day as needed for his headache and pain, *id*., scheduled him an appointment with Gilmer Eye Care, and noted that the doctor's office was in the process of scheduling his hernia surgery. *Id*. Sharp's medical records contained in evidence note the prescription of Ibuprofen for his migraines in connection with his eyes. Once again, during his time at the jail after he complained about his eye pain, jail officials provided pain medication and scheduled him an eye appointment—which fails to support a claim of deliberate indifference. *See DeLaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018) ("Thus, mere disagreement with

one's medical treatment is insufficient to show deliberate indifference, as are claims based on unsuccessful treatment, negligence, or medical malpractice.").

Moreover, the medical note also contains information revealing that Lieutenant Ferguson explained that this was an "ongoing issue" and that upon numerous occasions when released from the jail, jail officials told Sharp to make an eye appointment—but that he had not done so, as his appointment was cancelled. The docket further reflects that in October 2023, Sharp visited the nurse and complained of dry, irritated eyes, and internal stitches that he had pulled out, (Dkt. #32-1, pg. 9). The nurse remarked that she would send a request to Dr. Buller for daily eye drops and orbital x-rays; Dr. Buller returned orders to refer Sharp to an eye doctor but that he declined to order eye drops and/or an orbital x-ray until Sharp visited Gilmer Eye Care. *Id.*

Similarly, on October 20, 2023, Sharp arrived at the jail's medical department with an irritated eye with drainage and itching, at which point he was "transported to Upshur County to Healthfast per medical Nurse Jones for eval and treatment due to" symptoms worsening, (Dkt. #32-1, pg. 9). He was diagnosed with acute conjunctivitis and prescribed Ofloxacin .03% eye drops. *Id.* While Sharp took the first dose, he then missed two doses, took one more, and then continued to refuse the rest. Id. at pg. 10. He remarked that the drops burned, and that he declined changing eye drops because he did not want to spend money "on these drops that are not helping." Id. The notation further revealed that Sharp's eye had improved during this time, even though he did not finish the course of his drops—and that he had an appointment with Gilmer Eye Care.

On November 9, 2023, Sharp was evaluated at the Gilmer Eye Clinic where he was diagnosed with trichiasis without entropion in his right lower eyelid, and had ten lashes removed, (Dkt. #32-1, pg. 10). He was prescribed medication for comfort, which was to be continued

9

"indefinitely" until he was seen by a specialist.

Here, the uncontested summary judgment evidence—which contains Sharp's medical records while inside the Upshur County Jail—demonstrates that he received a significant quantum of care regarding his eye problems. He was evaluated, treated, prescribed pain medication, and referred to and evaluated by a specialty eye clinic. Such evidence does not demonstrate that any Defendant acted with deliberate indifference; in fact, to the contrary, the record shows that he was evaluated and even referred to a specialist.

To the extent that Sharp complains that the eye drops did not "help," or proved ineffective, as mentioned, unsuccessful medical treatment does not constitute deliberate indifference. *See Miguel v. McLane*, 2024 WL 747232, at *6 (5th Cir. Feb. 23, 2024) ("Evidence of unsuccessful medical treatments, incorrect diagnoses, or disagreements with the treatment provided are insufficient."). In this case, there is no evidence that either Defendant Buller or Defendant Jones acted with deliberate indifference to his serious medical needs, and these claims should be dismissed.

### c. Hernia Surgery and Pain Medication

Sharp claims that he was scheduled for surgery on a hernia in 2023, but that the surgeon called Defendant Jones and told her that he would not perform the surgery if the Jail would not agree to provide him narcotic pain medication prescribed after the surgery, (Dkt. #1, pg. 5). Sharp contends that once back at the Jail, he was not given his prescribed medication and was in pain.

But it is well-settled that a jail's decision to discontinue the use of narcotic pain medication—which had been previously prescribed—and to, instead, substitute pain medication that is not a narcotic does not amount of deliberate indifference. *See Baez v. I.N.S.*, 2007 WL 2438311, at *2 (5th Cir. Aug. 22, 2007) (unpublished) (the substitution of non-narcotic pain prescription because of prison policy prohibiting narcotics fails to state a claim upon which relief

may be granted); *Williams v. Berry*, 273 F.3d 1096, 2001 WL 1085197, at *3 (5th Cir. Sept. 7, 2001) (per curium); *Thomas v. Seago*, 2008 WL 4414371, at *3 (S.D. Tex. Aug. 23, 2008) (unpublished) (the substitution of non-narcotic medication for Tylenol #3 by unit doctor due to the fact that narcotics cannot be kept on person is not deliberate indifference). Sharp's dissatisfaction that he was not provided narcotic pain medication while inside the Jail is without merit.

### 2. Medical Bills

Sharp insists that the Upshur County Jail is responsible for his medical bills because it agreed to pay the bill. The summary judgment evidence reveals, however, that Sharp signed the Jail's Medical Billing agreement, (Dkt. #32-1, pg. 7, Exhibit E), that provides that it was not the jail's responsibility to cover the costs of medical services provided to non-indigent inmates—and never signed an indigent healthcare form or filed for indigent status, (Dkt. #31-1, pg. 4, Exhibit A).

The Supreme Court has held that while a pretrial detainee has the constitutional right to receive medical care, how this treatment is obtained by the detaining authority is not a constitutional question. *City of Revere v. Ma. General Hosp.*, 463 U.S. 239, 245-6 (1983) (emphasis supplied). The Court expressly stated that nothing articulated in that opinion affected any right that a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him. *Id*. at 246, n.7.

Similarly, the Fifth Circuit has held that there is no constitutional violation in assessing fees to county jail inmates for medical care. *Myers v. Klevenhagen*, 97 F.3d 91, 95 (5th Cir. 1996); *Moore v. Patterson*, slip op. no. 90-1883 (5th Cir., Jan. 26, 1993) (unpublished). In *Moore*, the Fifth Circuit expressed agreement with the court in *Fant v. Fisher*, 414 F. Supp. 807 (W.D. Okla. 1976), which said that the state's obligation to provide a prisoner with medical care "does not

11

include a duty that the medical care be furnished without cost to a non-indigent prisoner whose ability to pay is not questioned." *Fant*, 414 F. Supp. at 809.

Here, Sharp provides nothing to refute his own billing agreement with the Jail, nor any showing that the jail was required, under the Constitution, to pay for his non-indigent healthcare he received outside the Jail. This claim should be dismissed.

### 3. Qualified Immunity

Defendants invoke qualified immunity. Sharp has the burden to demonstrate that the defense of qualified immunity does not apply. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020); *Cunningham v. Castloo*, 983 F.3d 185, 190-91 (5th Cir. 2022). Conclusory allegations are insufficient to overcome the defense. *Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 643-44 (5th Cir. 2014); *see also Edmiston v. Borrego*, 75 F.4th 551, 561 (5th Cir. 2023) (rejecting Plaintiffs' conclusory statement).

To demonstrate the inapplicability of the qualified immunity defense, the plaintiff must satisfy a two-prong test. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The first prong is whether "the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). The second is "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citations omitted). A court may consider the two-pronged inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, Sharp has not met his burden: He has not identified a constitutional violation. The summary judgment evidence, which is uncontested, demonstrates that Sharp received a significant quantum of medical care while housed inside the jail—including medical evaluations, referrals,

pain medications, and an arrangement for his hernia surgery. He has neither overcome Defendants' properly supported motion for summary judgment nor met his burden to overcome Defendants' entitlement to qualified immunity.

## RECOMMENDATION

Accordingly, it is recommended that Defendants' motion for summary judgment, (Dkt. #31), be granted and that this case be dismissed with prejudice.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 30th day of July, 2024.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE